Okay, we have three more cases. The next one is Kon v. Sherman. Yes, ma'am. May it please the Court, Devin Hine on behalf of, I'm sorry, from the Office of the Federal Public Defender, on behalf of Petitioner Appellant Kenneth Kon. Mr. Kon clearly pled in state and federal court that he requested an attorney three times. At the time of his arrest, when the police first re-initiated questioning, and again when they continued to question him. Nonetheless, they continued to pressure him until he made incriminating statements. That's three times. I thought two times. I mean, he says two times. What's the third time? The first time is at the time of arrest. The second time he says, I'm sorry, he invokes his Fifth Amendment right three times. The second time he says, don't talk, that's all I have to say. And the third time is when he asks when his attorney will arrive. Clarifying, there is some dispute about this transcript and whether he actually said the second thing. Where are we on that? Well, he pled in all of his petitions to the state court and in his federal petition that that transcript was the proper reading of his statement. The state's version just says inaudible. His version says this. And he got it from the transcription done by the, I believe, the state public defender at the time. Now, whether or not it was authenticated, I think, was brought up by the district court. But at the pleading stage, it didn't need to be authenticated. And he would have had no means to do so until he got counsel, which would have required moving past the pleading stage. The key issue is whether he made that first statement in the parking lot, was it, at the school or wherever he was arrested. Yes. Because at least the way, remind me, in the state habeas petition, he just wrote out kind of this is what I said. And it was something like I asked for a lawyer and was told there aren't any available at the end of the day or something like that. Yes. He said that, again, in all three petitions. And the record support, the record, while it doesn't, there's no separate way to authenticate that at this time, because, again, he was dismissed at the pleading stage. The record does nothing to contradict it. Detective Schilling, in fact, said in his own testimony that he questioned Kahn at the time of his arrest. And so I can't remember what the state's response was. Was it something to the effect that, well, but he never verified that under oath or he never submitted. The state's argument was that it wasn't verified under oath. And it was because it was a verified complaint. Well, it was a verified petition. So they're always, yeah, under penalty of perjury from the petitioner. Your position is that, I assume, at the very least in state court, he was entitled to an evidentiary hearing to basically put the detective on. I guess the detective would have to dispute that. Correct. Because it seems if you credited what he said that happened in the parking lot, it's pretty easy case. Exactly. It's an unambiguous request. And they continue to question him not only after that, but also this Court held in Jones v. Harrington that his second disputed request, I don't talk, that's all I have to say. In Jones v. Harrington, the defendant said, I don't want to talk, man, and that was supposed to be the end of it, according to this Court. So there are at least two separate statements that should have his questioning. I have another question. What do you make of what was said after that? Or when he said, when will the lawyer come here? And they said, that's up to you? I would make of that that they were trying to continue to cajole him to speak to them instead of respecting his right to counsel or silence. It seems to me that one could read that as saying, you're not going to get the lawyer unless you talk to us. Right. And also that I've already asked for that attorney, when is he going to get here? So I think that further supports his initial request. No, I understand that part. I'm asking about what was said next by the ---- Oh, yes, when he says, well, that's up to you if you tell us your side of the story, et cetera. I certainly think that's a plausible reading as well, is that they were continuing to try to convince him that speaking to us is to your benefit. You didn't point to this, and so maybe it's off the table, but I don't know what else it could mean exactly. What does it mean when they say it's up to you? What's up to you? It's up to you if you talk to us, essentially. Right, right. Well, I think that the State's position would have been that they were trying to tell him that he could call for a lawyer. But I do agree that it's more that they were trying to convince him that speaking to him was more to his benefit than having the lawyer come. I think if all you had was that second statement that's transcribed, I think you would be out of luck. To me, that's quite ambiguous as to whether he was ---- Again, in Jones v. Harrington, the statement was, I don't want to talk no more, man. I think it means the third one. I don't count that as a request for a lawyer. You mean when will the attorney arrive? Yeah, if that's all you had in terms of an invocation of the right to counsel. Right, but I do think that he pled, as pled, which should have gotten into an evidentiary hearing. There were two other unambiguous requests for counsel here. I also wanted to address briefly the fact that ---- I'm not going to say anything. Do you think that was a request for counsel? Well, it was an invocation of the right to remain silent. So, again, a time that should have ceased questioning. Again, in Jones v. Harrington, that was the situation. In other words, it's a separate argument. It's not that it was a request for counsel. It's that it was an invocation of the right to not talk. Yes, yes, Your Honor. At all. Silence. The right to silence. Yes, Your Honor. And then I just want to address the fact that as the state makes much of it in its briefing, this case in our position was not decided on its merits. The state court, for whatever reason, said that they were dismissing on procedural grounds, and the state waived that, waived any procedural challenges in the district court. Well, there was a procedural default ground that could have been asserted, right? I would say that that might be plausible. But in any event, the state should not be. But this claim should have been raised on direct appeal. It should have been. And it was not. And there is also an uncertified claim that Conn did make for ineffective assistance of counsel, which I think is also important here because looking at these statements, again, if these first two unambiguous statements and the third, which I still argue is not ambiguous, especially in light of the first two, had been made and the counsel had addressed them at the outset of the case, the case would have looked very different because that's the time to. On Judge Watford's point, it couldn't have been raised in direct appeal because it depended on evidence outside the record of the appeal, right? That statement about, I mean, the key question here is whether there was, he did ask for a lawyer at the time of the arrest outside the school, and that was never, wasn't asserted in the direct appeal. Well, it wasn't asserted in the direct appeal, but it also, and also you're. Was it? Am I right about that? You're right. It was not addressed at all. And that's exactly why you would need an evidentiary hearing because it wasn't in the record of the direct appeal. Correct. But no, no, it would have to be an IEC claim at that point. It's a Miranda claim. You can always raise, you don't need habeas to raise a Miranda claim. It's based on the record you could develop in the trial court, and you should if you're a competent lawyer and you want to get your client's confession excluded. Correct. And, again, the statement, don't talk, that's all I have to say, is in the record. It could have been raised at trial. It wasn't, but it couldn't have been raised in direct appeal because it wasn't in the record. Yes, Your Honor. Okay. I understand that. And, again, as I said, there was an uncertified claim here for ineffective assistance of counsel as well. But, so, again, we've addressed that the statements in our position, the statements were unambiguous. I'd also like to address the issue of prejudice. Again, because in our position there was no merits review here by the state court, and we're in de novo review, this is not a situation where the Supreme Court's precedent regarding voluntary and involuntary statements overruled or overreaches that of this court. And in this court, when there are multiple adverse violations like there were here, that puts a burden on the state to establish that there was a voluntary waiver, and that can't be done on this record. So. Voluntary waiver of what? Of the right to counsel. The reason for the incriminating statement was that the petitioner voluntarily waived the right to speak, and where the petitioner has been badgered into speaking by multiple instances of ignoring their request for counsel or for silence, it would render the statement involuntary and, therefore, inadmissible in all respects. I don't understand. You went that second step in your brief, too, and I don't understand it. I mean, if there's a Miranda violation, there's a Miranda violation. That's the end of the story. Right. And I was addressing the argument from the state that that would be non-prejudicial because it would still be allowed as impeachment because the defendant testified. Oh, I see. So it was a second argument, but it wasn't used in impeachment. No, it was made in the case in chief. Correct. Right. I'd like to reserve my time. All right. Thank you very much. Thank you. Good morning, Your Honors, and may it please the Court. Christopher Beasley, Deputy Attorney General, on behalf of the Respondent. Yes, the procedural hurdles in this case are kind of strange. There was never a suppression motion made in the trial court, which is kind of unusual in a case like this. And because there was no suppression motion, it wouldn't have been able to be raised on direct appeal because of the contemporaneous objection was never made. We didn't – we did not assert any of the procedural bars in the district court. So really, the procedural bars are off the table entirely because of our own mistake and forfeiture. Well, it wasn't a mistake. You wanted it that way, as I understand it, because you want to argue that it was decided on the merits. Well, there's – there's a couple of ways that you can look at it. And if you look at what the Supreme Court – So I'm saying that this was just not an inadvertence. It was a deliberate decision to take it as having been decided on the merits. Yes. I agree with that. I agree with that. I don't necessarily agree with the tactic that the attorney who wrote it – I understand. But there was – this isn't a question of somebody forgot something. No, that's correct. It was tactical on that – on that front. Now, even assuming that there was a Miranda violation, this was a harmless error under Brecht because there's no substantial or injurious effect upon the verdict because we have the victim's testimony where she testified at trial that the defendant touched her buttocks. Can you distinguish Garcia versus Long? I'm not sure I – I'm sorry. I – never mind. But it seems to me it's being almost the exact same factual circumstance. Right. And if it's – if in Garcia v. Long the same kind of facts were presented and the defendant testified and the same kind of facts were presented from the witnesses, then you do have a harmless error kind of analysis that does apply. Here we have a victim who testified about how the defendant touched her buttocks, how he touched her vagina, how he touched the – Well, yes, but witnesses don't have to be believed. That's absolutely correct. That's why confessions are such strong evidence. I absolutely could agree with that, Judge Berzon. Confessions are probably the most powerful of evidence. Okay. So how could it be harmless? Because we have his confession that preceded a Miranda violation. His confession to Mom in the pretext phone call where he admits to Mom that he touched her daughter's buttocks, that he touched her vagina, that he touched her down low, that he touched her inappropriately. The pretext phone call was completely admissible. And so that eviscerates this idea that this confession only came in because of the police interview. We have two, basically, confessions. One to the mom in the pretext phone call, and then one to the police. Now, even if the police confession is excluded, the confession to Mom is entirely admissible and would have come in corroborating the victim's testimony about where the defendant touched her. Was that phone call, was there a tape or a transcript of it? Yes. Yes. It's in the supplemental excerpts of record that we filed. And then on top of that, you had the defendant. The defense in this case was I – Can I back off for a minute? I mean, this comes close to a confession or a recognition by you that you have a problem on the merits of the Randa question. Can I take it as that? Because of the fact that there was a – he has a – you said he doesn't have a statement of penalty of perjury, but he does. Are you – Right, I agree. That this happened before the interrogation. So you've got a problem. That is a – yeah. I stand by the briefing that we have submitted and that we still – But you don't, because you said rigorously that it was not under penalty of perjury and it was. That part I back away from, yes. But as far as whether the second invocation, I dispute that the first invocation, if it did happen, I dispute that that has to be read in context with the second invocation later, four hours later. The first by itself would be sufficient to stop all questioning. It should be, but there was a four-hour break. That's all he has to – Well, and I agree with that. But there was a four-hour break plus the giving of the Miranda warning. And so he's now warned with Miranda. And now in context of that warning, do you wish to speak to us? Now I agree that, Edwards, we have to stop. Okay. Remind me what – I thought the case law maybe as opposed to invocation of the right to silence, the invocation of the right to counsel was pretty much once that four hours, come at the guy again and see if he can get around at that time. I thought you pretty much had this. I think I might be missing – I might be mixing the silence. I think you're right. I think Matt might have missed those. Okay. Well, put it on the side. Regardless, regardless of where – whether there was an invocation, and even if there is an invocation, this still is harmless. There's no substantial or injurious effect because you have the victim's testimony, you have the pretext phone call, which is perfectly admissible, and then on top of that, the defendant's own test – the fact that he testified – his only defense was, I never touched her. In light of that pretext call, he had to testify. He had to get up and he had to explain the statements that he made to mom in that pretext phone call. Remind me, what exactly did he say in the pretext phone call? That he touched her daughter, he touched her buttocks. I thought he said it was – but it was accidental or something. I thought it was far less incriminating than what you're sort of characterizing. You're right. He did try to minimize it. He did try to minimize it. He had admitted that he touched her buttocks. He admitted that he touched her down low, that he touched her vagina. He did say, he tried to minimize it and say that it was accidental and that he apologized to the daughter for that conduct. He even said anything that the daughter has said, I won't contest that, I won't dispute that, she's telling the truth. So that kind of testimony, he would have to – that kind of – those kinds of statements he would have to explain at trial. And he did. He testified at trial. Once he testifies, the statements that he makes to the police post the Miranda invocation, or the invocation for the right to counsel, those would be admissible under New York v. Harris. And they were used by the prosecutor in that impeachment kind of way. And so those statements would still come in. And so even if there were a Miranda violation on the – But they didn't come in as impeachment. The prosecutor used his – the prosecutor used his statements to the police both in the case in chief and to impeach his testimony later when he's testifying. Didn't you say to the police, X, Y, and Z? And so it did come in for that purpose as well under New York v. Harris. Do our cases – I just don't remember what the cases say on this point. Do we assume that if the confession had properly been excluded from the case in chief that the defendant still would have testified in the same way that he did? Or – I guess I thought the harmless error analysis – we couldn't factor in – because obviously if we are taking into account the fact that he testified, it's going to come in anyway. So I thought we had to just, like, pretend that, well, if they'd been able to get the confession out, then presumably he would have not taken the stand, right? If you brought a successful suppression motion to – because you were so worried about keeping the confession out, I think the last thing you'd do is take the stand and then have it come in anyway, right? I agree with that. But the problem is that his confession to mom doesn't stay out. His confession to mom has – does come in. And so then in order for his defense to really work, he has to take the stand. And because he did take the stand, then the confession to the police, even though it may have been violative of Miranda, is admissible. And therefore, there was no problem here. And so there could be no substantial or injurious effect. For what purpose is it admissible? An out-of-court statement is not admitted for the truth of the matter, sir. So would it be admissible for that? To impeach his testimony. Yeah. But so wouldn't you give a jury a separate instruction on its use of that? You would. That's correct. A telephone call. You would instruct the jury that, you know, the statements that he makes can be used to impeach him. That's correct. No, but what about the telephone call? What could that be used for? The telephone call is a – those are party admissions. He's part of this action. These are declarations against interest under the state hearsay rules. These admissions of his criminal conduct come in as declarations against his penal interest, and therefore, they're perfectly admissible. So there's no – there's no admissibility question as to the phone call on this record. I see that – oh, no, my time's not up. Your time is not up. But you don't have to keep talking. Well, I don't think I have anything more to say. If this Court has further questions, I'm happy to address them, of course. But otherwise, we would submit. Thank you, Your Honors. Okay. You want to address the harmlessness question? You want to address the Brecht question? Yes. Thank you. I just wanted to revisit the phone call because I think that is important. The phone call was made right from the parents of the victim to Mr. Kahn. I think the whole context of the phone call was very apologetic. An apology is often considered, just like a confession, a very – I'm sorry – a very impactful statement, but also one that we know even in civil court sometimes isn't allowed in because they're so often made with an effort to placate the other party that they're not necessarily indicative of what's happening. The phone call was admissible. So what – do you dispute your opponent's characterization of what he said? Yes. The phone call – what Mr. Kahn is really saying in the phone call is, I won't call your daughter a liar. If you say – if this is what she said, I'm not calling her a liar. I usually rub my daughter's back, and I think one day I accidentally rubbed her back instead. She said she didn't like it. I won't do it anymore. There's also a language barrier here. So when you look at that transcript and you hear that phone call, I think it's clear to say that on its own it would have left a good amount of So I don't think it's true that he would have had to testify to counteract the phone call. There were also numerous character witnesses. But that's not the question. The question is whether the phone call and the victim's testimony together are sufficient to overcome whatever prejudicial effect there was with the confession. No, I don't think there is, and I think that's true because this was a confession that was professionally extracted by the police using their particular interrogation tactics to get him to admit to each and every allegation they wanted to bring. So, no, there's no discussion of insertion. There's no admittance to insertion or anything of that nature, for example, in the phone call as opposed to in the confession. There's also the apology letter that they get him to write, which is also extracted during the confession and entered into the record as evidence. So if anything, I think these confessions, one confession corroborates another and still almost always has a harmful effect. I don't think there's an argument for harmless error here. Okay. Thank you very much. Thank you both for your useful argument in an interesting case. Kahn v. Sherman is submitted.
judges: Berzon, Watford, Whaley